**CITY OF DALLAS, Petitioner,**

v.

**Margaret THOMPSON, Respondent.**

No. 05–0787.

Supreme Court of Texas.

Dec. 1, 2006.

Rehearing Denied Feb. 2, 2007.

Barbara E. Rosenberg, Assistant City Attorney, Johnanna Greiner, Dallas City Attorney's Office, Dallas, for petitioner.

Gary Johnson, Foreman, Boudreaux, Smith & Johnson, Dallas, for respondent.

PER CURIAM.

Respondent Margaret Thompson sued the City of Dallas, alleging that while walking through the lobby of Dallas Love Field airport she tripped on the lip of an improperly secured, metal, expansion-joint coverplate protruding up from the floor and fell, fracturing her shoulder. The trial court sustained the City's plea to the jurisdiction based on governmental immunity, concluding that there was no evidence the City actually knew of the alleged protruding coverplate. The court of appeals reversed. 167 S.W.3d 571 (Tex.App.-Dallas 2005). We agree with the trial court.

The parties agree that the City is immune from suit unless there is evidence

that it actually knew of the alleged protruding coverplate. *See* TEX. CIV. PRAC. & REM. CODE § 101.021 ("A governmental unit in the state is liable for ... personal injury ... caused by a condition ... of ... real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law."); *id.* § 101.022(a) (stating that absent an exception not applicable here, "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises"); *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992) (stating that to establish liability for a premises defect, "a licensee must prove that: (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition ..."); *see also State v. Tennison*, 509 S.W.2d 560, 562 (Tex.1974) ("Actual knowledge rather than constructive knowledge of the dangerous condition is required.").

The evidence was this: The lobby area in which Thompson fell was well-traveled, and passengers and City employees walked through the area daily, including the day of the fall. In the hours prior to Thompson's fall, City employees had been in the area of the coverplate and probably had walked over it, but no one reported or observed the coverplate protruding from the floor. Accident logs reflected reports of tripping where Thompson did, but none for at least three years. The City knew that the coverplate could become loose and raise suddenly or over time with ordinary wear and tear, and when it did, City employees would tighten it. After Thompson fell, the City added a screw to the end of the coverplate where it was protruding.

■ Thompson argues that the fact that the coverplate could loosen and protrude over time made the coverplate itself, actually protruding or not, a dangerous condition, and the City's knowledge of this periodic protrusion and the need for inspection and maintenance satisfied the requirement of actual knowledge. But we have held that the fact that materials deteriorate over time and may become dangerous does not itself create a dangerous condition, and the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time. *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 100–02 (Tex.2000) (holding that the defendant's knowledge that its stair and platform units periodically became unstable was not evidence the units were unreasonably dangerous, nor evidence of actual or constructive knowledge that a unit had become dangerous when plaintiff was injured); *see also State v. Gonzalez*, 82 S.W.3d 322, 330 (Tex.2002) (holding that evidence that the State "knew the [traffic] signs had been repeatedly vandalized does not indicate, either directly or by reasonable inference, that [it] actually knew the signs were down before the accident occurred").

Thompson argues that the City's knowledge of past reports of tripping was sufficient. But the reports were all far too remote to show that the City knew of a dangerous condition at the time Thompson fell.

■ An expert witness for Thompson testified that the City must have known of the dangerous condition because its employees were in the vicinity and walking over the coverplate in the hours prior to Thompson's fall. But without evidence showing how long the alleged protrusion had existed, the proximity of the employees is no evidence of actual knowledge. *Wal–Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex.2002) ("An employee's prox-

imity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition...."); *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 296 (Tex.1983) (holding that plaintiff failed to show actual knowledge when the evidence did not show the condition had existed "a sufficient time to impute knowledge" to the defendant).

■ Finally, the City's use of an additional screw in the coverplate following Thompson's injury is not any evidence of actual knowledge. We said in *CMH Homes* that "[e]vidence that an owner or occupier knew of a safer, feasible alternative design, without more, is not evidence that the owner knew or should have known that a condition on its premises created an unreasonable risk of harm." 15 S.W.3d at 102. Here, there is evidence that additional screws had been added to other coverplates, but there was no evidence that a coverplate without the additional screw was dangerous when properly tightened.

Thompson failed to present any evidence of the City's actual knowledge of the protruding coverplate. Accordingly, we grant the City's petition for review and without hearing oral argument, TEX. R. APP. P. 59.1, reverse the judgment of the court of appeals and affirm the judgment of the trial court.