IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 07-0743
════════════
 
Texas 
Department of Transportation, Petitioner,
 
v.
 
Jimmy 
Don York, 
Individually and on Behalf of the Estate of Rebecca York, Deceased and James R. 
Bodiford, Jr., Individually and on Behalf of the 
Estate of Rebecca York, Tonya Bodiford, and Shirley 
Fowler, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Tenth District of 
Texas
════════════════════════════════════════════════════
 
 
PER CURIAM
 
 
            
In this case, we decide whether loose gravel on a road is a “special 
defect” under Texas Civil Practices and Remedies Code section 101.022(b). 
We hold that loose gravel is not a special defect as a matter of law, and 
therefore, reverse the court of appeals’ judgment and remand to the trial 
court.
            
On October 29, 2003, Rebecca York lost control of her vehicle while 
crossing a patch of loose gravel on Farm-to-Market Road 979 in Robertson County. She crossed the center line and 
struck an oncoming truck. She died at the scene. The day before the accident, a 
Texas Department of Transportation (TxDOT) crew had 
applied a spot seal coat on the portion of highway where the accident occurred. 
A spot seal application consists of three steps: (1) liquid asphalt is sprayed 
onto the road surface; (2) a layer of gravel (or aggregate) is spread on top of 
the asphalt; and (3) the gravel is rolled into the asphalt. The asphalt then 
hardens to hold the gravel in place and form a new road surface. By the time 
York reached the 
serviced patch of road the next morning, however, the road surface was covered 
with a layer of loose gravel approximately one-half to three-quarters inches 
deep. The cause of the presence of the excess loose gravel is disputed.
            
York’s 
surviving spouse filed a wrongful death suit against TxDOT.[1] TxDOT asserted 
sovereign immunity against suit and liability, except to the extent waived under 
the Tort Claims Act. After the presentation of arguments and evidence, the trial 
court submitted a jury charge with a special defect instruction, rather than a 
premise defect instruction. The jury returned a verdict in York’s favor, awarding 
damages of $1,033,440. Pursuant to statutory limitations, the verdict was 
reduced to $250,000. TxDOT moved for judgment 
notwithstanding the verdict or a new trial, which the trial court denied. TxDOT then appealed the judgment to the court of appeals, 
arguing that loose gravel is not a special defect, but rather, a premise defect. 
The court of appeals disagreed, holding that the loose gravel is a special 
defect and affirming the trial court’s judgment. 234 S.W.3d at 
218. We reverse.
            
The State of Texas is protected from suits for damages by 
sovereign immunity, unless waived by statute. Gen. Servs. Comm’n v. Little-Tex Insulation Co., 
Inc., 39 S.W.3d 591, 594 (Tex. 2001); Tex. Dep’t of Transp. v. Jones, 8 S.W.3d 
636, 638 (Tex. 
1999) (per curiam). Legislative consent to waive sovereign 
immunity by statute must be by “clear and unambiguous language,” TEX. GOV’T CODE § 311.034, and suit can 
then be brought “only in the manner indicated by that consent.” Wichita Falls 
State Hosp. v. Taylor, 106 S.W.3d 692, 694 (Tex. 2003) (citing Hosner v. DeYoung, 1 
Tex. 764, 769 
(1847)). “[W]hen construing a statute that purportedly waives sovereign immunity, we generally resolve ambiguities by retaining 
immunity.” Wichita 
Falls State Hosp., 106 S.W.3d at 697.
            
The Texas Legislature has waived sovereign immunity for personal injury 
claims arising from a premise defect. Tex. Civ. Prac. & Rem. 
Code § 101.021. 
Former section 101.022 of the Texas Civil Practices and Remedies Code[2] applied different duties of care to a 
suit depending on whether the condition was a premise defect or a special 
defect:
 
(a) If a 
claim arises from a premise defect, the governmental unit owes to the claimant 
only the duty that a private person owes to a licensee on private property, 
unless the claimant pays for the use of the premises.
 
(b) The 
limitation of duty in this section does not apply to the duty to warn of special 
defects such as excavations or obstructions on highways, roads, or streets or to 
the duty to warn of the absence, condition, or malfunction of traffic signs, 
signals, or warning devices as is required by Section 101.060.
 
Act of May 17, 1985, 69th Leg., 
R.S., ch. 959, 1985 Tex. Gen. Laws 3242, 3303 (amended 
2005) (current version at Tex. Civ. Prac. & Rem. Code § 101.022) 
(hereinafter § 101.022). If 
a claim involves a premise defect under section (a), a licensee standard 
applies. Tex. Civ Prac. & Rem. Code § 101.022(a); 
see also State Dep’t of Highways & Public Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 
1992). Under a licensee standard, a plaintiff must 
prove the governmental unit had actual knowledge of a condition that created an 
unreasonable risk of harm, and also that the licensee did not have actual 
knowledge of that same condition. Payne, 838 S.W.2d at 
237. But if a claim involves a special defect under section (b), a more 
lenient invitee standard applies. Tex. Civ. Prac. & Rem. 
Code § 101.022(b). 
Under an invitee standard, the plaintiff need only prove that the 
governmental unit should have known of a condition that created an unreasonable 
risk of harm. Payne, 838 S.W.2d at 237; see also 
State Dep’t of Highways & Pub. Transp. v. Kitchen, 867 S.W.2d 784, 786 (Tex. 1993) (per curiam) 
(“Absent a finding that the State knew of the dangerous condition prior to the 
accident, it is not liable to plaintiffs unless the condition was a special 
defect.”). Whether a condition is a premise defect or special 
defect is a question of law, which we review de novo. Payne, 838 S.W.2d at 238.
            
The Civil Practices and Remedies Code does not define “special defect,” 
but does give guidance by likening special defects to “excavations or 
obstructions.” See Tex. Civ. 
Prac. & Rem. Code § 
101.022(b). Thus, “[u]nder the 
ejusdem generis rule, we are 
to construe ‘special defect’ to include those defects of the same kind or class 
as [excavations or obstructions].” 
County of 
Harris v. Eaton, 573 S.W.2d 177, 
179 (Tex. 
1978). While these specific examples “are not exclusive and do not 
exhaust the class,” the central inquiry is whether the condition is of the same 
kind or falls within the same class as an excavation or obstruction. 
Id.; City of Grapevine v. Roberts, 946 S.W.2d 841, 843 (Tex. 1997) (per 
curiam). A special defect, then, cannot be a condition that falls outside 
of this class. See Payne, 838 S.W.2d at 238, n.3 (“[T]o the extent 
[courts] classify as ‘special’ a defect that is not like an excavation or 
obstruction on a roadway, we disapprove of them.”); Eaton, 573 S.W.2d at 
179 (“The statutes provide an understanding of the kinds of dangerous conditions 
against which the [L]egislature intended to protect 
the public. They are expressed as such things ‘as excavations or roadway 
obstructions.’”). We have recognized some characteristics of this class that 
should be considered. See Eaton, 573 S.W.2d at 179 (“the size of the 
dangerous condition”); see also City of Dallas v. Reed, 258 S.W.3d 620, 
622 (Tex. 2008) (per curiam) (“some unusual quality outside the ordinary course 
of events”); State v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999) (per 
curiam) (something that “unexpectedly and physically impair[s] a car’s ability 
to travel on the road”); Payne, 838 S.W.2d at 238 (“an unexpected and 
unusual danger to ordinary users of roadways”).
            
A layer of loose gravel on a road does not share the characteristics we 
have articulated in any of the above cases, and, thus, does not fit within the 
same class as an obstruction or excavation. Loose gravel does not form a hole in 
the road or physically block the road like an obstruction or excavation. See 
Eaton, 573 S.W.2d at 178-80 (holding that a large hole six to ten inches 
deep and four to nine feet wide covering ninety percent of the road’s width was 
a special defect, and suggesting an avalanche clogging a mountain road would 
likewise be a special defect); see also State v. Williams, 940 S.W.2d 
583, 585 (Tex. 1996) (deferring to the court of appeals’s finding that a street sign lying in middle of a 
highway was a special defect). Likewise, less than an inch of loose 
gravel does not “physically impair a car’s ability to travel on the road” in the 
manner that an excavated road or obstruction blocking the road does, 
Rodriguez, 985 S.W.2d at 85, nor does it present the same type of 
“unexpected and unusual danger to ordinary users of roadways” as does this 
class. Payne, 838 S.W.2d at 238. And while loose 
gravel could fall within this class if, for example, a sizeable mound of gravel 
were left on the roadway, a layer of loose gravel falls in the same class as 
ordinary premise defects—those conditions that do not reach the level of an 
obstruction or excavation. See, e.g., Reed, 258 S.W.3d at 
622 (holding that a two-inch difference in elevation between traffic lanes on a 
roadway was not a special defect); Rodriguez, 985 S.W.2d at 86 (holding 
that a ninety-degree turn in a detour from a road construction project was not a 
special defect); Kitchen 867 S.W.2d at 786-87 (holding that an icy bridge 
was not a special defect); Payne, 838 S.W.2d at 239 (holding that a 
culvert beneath a roadway was not a special defect).
            
The trial court applied the wrong duty of care in this case. The jury 
charge did not contain a premise defect instruction, so the jury did not have an 
opportunity to determine liability under that stricter licensee standard. The 
record reflects conflicting testimony as to whether TxDOT had actual knowledge of the loose gravel, and whether 
York did not 
have actual knowledge of it. Therefore, the question of whether TxDOT satisfied the licensee standard of care should go to 
the fact finder. See Tex. Dep’t of Parks and Wildlife v. Miranda, 133 
S.W.3d 217, 226 (Tex. 2004) (“[I]n some cases, disputed evidence of 
jurisdictional facts that also implicate the merits of the case may require 
resolution by the finder of fact.”); Keetch v. 
Kroger Co., 845 S.W.2d 262, 266 (Tex. 1992) (“Proof that the premises owner 
or occupier created a condition which poses an unreasonable risk of harm may 
constitute circumstantial evidence that the owner or occupier knew of the 
condition.”). Because of this, we reverse the court of appeals’ judgment and 
remand the case for a new trial applying the premise defect standard.
 
OPINION 
DELIVERED: December 5, 2008








[1] 
In his original petition, York’s surviving spouse 
also included as defendants Robertson 
County, the driver of the 
other vehicle, and the driver’s employer, but later nonsuited them.

[2] 
The statute was amended in 2005 to include language dealing specifically with 
toll roads, which are not at issue in this case. See Tex. Civ. Prac. & Rem. 
Code § 101.022. The 
language is the same in all other respects. See id. Thus, our holding 
would be the same under the amended statute.